**TEXLER v MARQUARD, Admx.**

Municipal Court of Cleveland

Decided May 5, 1939

Shuler, Smith & Freer, Cleveland, for plaintiff and John Bellamy, of counsel.
Samuel M. Parks, Cleveland, for defendant.

**OPINION**

By DRUCKER, J.

Florence Hall, deceased, lived in the home of the plaintiff for six years prior to her death in February, 1936, as a housekeeper.

The day before her death she was removed to the hospital at the order of the doctor called by the plaintiff. She died within twenty-four hours.

The plaintiff paid the hospital bill and the doctor bill. Subsequently, the plaintiff and children of the deceased signed a note in the sum of $350 (three hundred fifty dollars) payable to the funeral director.

The plaintiff paid $330 (three hundred thirty dollars) of the note. Upon the appointment of the decedent's daughter as adminstratrix, plaintiff presented his claim amounting to $357.75 (three hundred fifty-seven dollars and seventy-five cents) to the administratrix within the statutory period.

The claim was rejected and this law suit against the administratrix was filed.

Can the plaintiff, not a relative, claim reimbursement for the payment of the funeral bill?

What interpretation should be given to the §10509-121, GC as to its effect on the common law rule and its provision that an administrator is liable only for a reasonable funeral bill?

There is a paucity of reported cases in Ohio on this question.

The leading case Patterson v Patterson, 59 N. Y. 583 is often cited and the following language is quoted with approval:

"I have no doubt that the reasonable and necessary expenses of the interment of the dead body of one deceased are a charge against his estate, though not strictly a debt due from him. The ground of this is the general right to have a decent burial after death; which implies the right to have his body carried decently covered from the place where it lies to a cemetery or other proper inclosure and there put under ground.

"Interment is the duty of the executor. From this duty springs a legal obligation and from the obligation the law implies a promise to him who, in the absence or neglect of the executor, **not officiously,** but in the necessity of the case, directs a burial and incurs and pays such expense thereof as is reasonable."

The rule was followed In re Tangerman's Estate, 235 N. Y. Supp. 213 (1929).

A very helpful opinion is contained in the case of Cape Girardeau Tel. Co. v Hamil, Admr., 160 Mo App. 521 (1911). In that case the decedent was employed by plaintiff as a linesman. While working for the company he fell off a pole and was killed. An officer of the company happened along, saw the body, called an undertaker to take charge of it and told him that the company would see that the bill was paid. The next of kin took charge of the funeral and the decedent was buried. The plaintiff company paid the funeral bill and sought reimbursement from the estate. In a lengthy opinion, the authorities, beginning with Patterson v Patterson, supra, were discussed and quoted from and the court came to the conclusion that the plaintiff should prevail. The court said:

"A funeral can not be delayed for judicial inquiries to determine upon whom the moral obligation rests most heavily.

"When such expenses are incurred, necessarily after the death of a person, there is no one legally authorized to represent the estate. The service must be rendered and necessary articles furnished immediately; it is better that these things should be done on the credit of the estate than that there should be hesitation and inquiry as to who is liable.

"**There is no question of subrogation here; plaintiff's right to recover rests on the fact that it is the one who paid the funeral expenses.**

"We are unwilling in a case of this kind, involving the right of sepulture, to hold that one connected with another, as was the employer here, taking upon himself in the exigencies of the case, the act of decent burial even without an express request ot the relatives of the administrator to make him whole, can not recover off of the estate of the decedent the amount that he has properly expended. A mere intermeddler can not recover. But an **employer** under the facts here in evidence is not an intermeddler."

The same theory is urged in the case of Sullivan v Horner, 41 N. J. Eq. 299.

The case of Phillips v First National Bank, 208 Ala. 589 (1922) is in point. Here a decedent had a bank account with the defendant bank, after his death his mistress prevailed on the bank to pay for the funeral. Subsequently, his administrator sought to recover the whole bank account. The court ruled that the bank might offset the funeral bill.

Cases of a similar import are: **McClellan v Filson, 44 Oh St 185;** Fogg v Hollbrook, 88 Me 169; Young v Honeycutt, 119 N. C. 510; Rice v R. R. Company, 195 Mass. 507; and Columbia Trust Co v Anglum, 63 Utah 353.

The general tendency of the courts seems to be that a stranger who pays the funeral bill who is not an officious meddler and who does so out of the needs of the occasion, will be entitled to reimbusement by the estate of the deceased provided the bill is reasonable.

The court takes the view that this is an obligation imposed by law on the theory of an implied contract.

In **Railway Company v Gaffney, 65 Oh St 104** (1901), the Supreme Court stated on Page 114:

"But contracts that are true contracts are frequently termed implied contracts, as, where from the facts and circumstances, a court or jury may fairly infer, as a matter of fact, that a contract existed between the parties, explanatory of the relation existing between them. Such implied contracts are not generally different from express contracts; the difference exists simply in the mode of proof. Express contracts are proved by showing that the terms were expressly agreed upon by the parties, whilst in the other case the terms are inferred as a matter of fact from the evidence offered of the circumstances surrounding the parties mak-

ing it reasonable that a contract existed between them by tacit understanding—and that by reason of this relation the defendant is indebted to the plaintiff for services performed or for goods sold and delivered."

See further: **9 O. Jur. 336, p. 119; 13** Corp. Jur. 240 et seq.

We quote from Woodward, The Law of Quasi Contracts, page 319, par. 205:

"It is settled that the reasonable and necessary expenses of interment of the body of a deceased person constitute a charge against his estate,—If no executor is appointed, it is, of course, out of the question to await the appointment of an administrator. Such a situation clearly demands that someone intervene in the representative's affairs and perform his duty for him.—And for the benefit conferred by such an intervention the executor or administrator must make restitution."

In the Restatement of the Law of Restitution, par. 115 (1936):

"A person who has performed the duty of another by supplying things or services, although acting without the other's knowledge or consent is entitled to restitution from the other if (a) he acted unofficiously and with intent to charge therefor, or (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety.

"The comment to this section (b) states that the rule applies to the burial of the dead in which case the action for restitution may be against a husband, parent, or other person having a duty to care for the body or against a subsequently appointed administrator, or executor."

See further: 24 Corp. Jur. par. 926.

Under the common law the plaintiff would be entitled to recover only if the amount expended be recognized as a reasonable funeral bill.

I do not believe that there is any-

thing in §10509-121 which modifies the rule of the common law.

The Code provision lists, under the order in which debts are to be paid, the bill of a funeral director as the first item not exceeding $350.00 (three hundred fifty dollars).

The court believes that the purpose of the statute is to provide an order of payments.

In the case of **Howett v Howett, 25 Abs 150** (1937):

"The section is a provision for the payment of debts of deceased and the determination of the priority in which they shall be paid. In no sense does it insure the payment of any debt.—"

The reports of the special committee on the revision of Probate Laws indicate that the only purpose of the $200.00 (two hundred dollar) limit, which was set in 1932, was to establish the limit of a preferred claim for a funeral bill rather than leave the establishment of such preference to the court. 2 Ohio Bar Association Report Supplement, p. 69 (1929-30); 3 Ohio State Bar Association Report Supplement, p. 93 (1930-31); Deibel's Ohio Probate Law (2nd Edition, 1932) par. 966, in its discussion of §10509-121, GC and the clause requiring payment of funeral expenses, still sets forth the requirement of reasonableness despite the $200.00 (two hundred dollars) priority limit of the statute.

In this case the plaintiff conferred with the children of deceased and the expenses of the funeral were modest and consistent with the standards and circumstances of the deceased.

The court finds from the facts and the evidence submitted that the funeral bill as submitted by the plaintiff was not unreasonable.

The court finds for the plaintiff in the sum of $350.00 (three hundred fifty dollars).